# U.S. District Court
## Southern District of Iowa (Central)
## CIVIL DOCKET FOR CASE #: 4:19–cv–00014–RP–CFB

DeVries et al v. Allura USA LLCm et al
Assigned to: Senior Judge Robert W. Pratt
Referred to: Magistrate Judge Celeste F. Bremer
Demand: $10,000,000,000
Cause: 28:1332t Diversity–Torts

Date Filed: 01/14/2019
Jury Demand: Plaintiff
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

**Plaintiff**

**Brian DeVries**
*on behalf of themselves and all others similarly situated*

represented by **Michael Hayes Biderman**
HAYES LORENZEN LAWYERS PLC
125 SOUTH DUBUQUE ST
SUITE 580
IOWA CITY, IA 52240
319–887–3688
Fax: 319–887–3687
Email: mbiderman@hlplc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Plaintiff**

**Nicholas J Price**
*on behalf of themselves and all others similarly situated*

represented by **Michael Hayes Biderman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

V.

**Defendant**

**Allura USA LLC**

**Defendant**

**Plycem USA LLC**

**Defendant**

**Elementia USA Inc**

**Defendant**

**Elementia SAB Be CV**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/14/2019 | 1 | COMPLAINT against All Defendants Filing fee paid in the amount of $ 400, receipt number 0863–3699608., filed by Brian DeVries. Notice of Dismissal for lack of Service deadline set for 4/15/2019. Rule 16 Notice of Dismissal set for 4/15/2019.(Biderman, Michael) (Entered: 01/14/2019) |

# Exhibit F

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

BRIAN DeVRIES, NICHOLAS J. PRICE,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

v.

ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC.,
ELEMENTIA, S.A.B. DE C.V.,

                Defendants.

_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

**AND JURY DEMAND**

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Brian DeVries and Nicholas J. Price, by and through undersigned

counsel, brings this action on their own behalf and on behalf of a Class of persons and entities

defined herein against Defendants, and for their Complaint alleges, upon information and belief

and based on the investigation to date of his counsel, as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is

complete diversity, (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars)

exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiffs'

class.

2.      Personal jurisdiction exists over Defendants Allura USA, LLC ("Allura"), Plycem

USA LLC d/b/a Allura, Plycem USA, Inc. ("Plycem"), Elementia USA, Inc. ("Elementia Inc.")

and Elementia, S.A., DE C.V. ("Elementia") due to the general and specific contacts it maintains

in the United States and the business they conduct in this Judicial District.   Furthermore,

Defendants maintain those contacts presently and did so at all times material to this action.

3.      Venue lies in this District, pursuant to 28 U.S.C. §1391, because Plaintiffs reside

in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred in this Judicial District.

## NATURE OF THE ACTION

4.      This is a class action asserting unfair and deceptive trade practices in violation of

the Iowa Consumer Protection Act, negligence, breach of implied warranty of merchantability,

breach of implied warranty of fitness for a particular purpose, fraudulent misrepresentation,

fraudulent concealment, unjust enrichment and seeking damages and declaratory relief in

connection with defective fiber cement siding designed, manufactured, marketed, advertised, and

sold by Defendants.

5.      At all times relevant herein, Defendants were engaged in the marketing,

advertisement, sale, and delivery of fiber cement siding in the State of Iowa.

6.      The Siding on Plaintiffs' and Class Members' homes suffers from an inherent

defect resulting in the Siding cracking, chipping, flaking, breaking or splitting.

7.      In conjunction with each sale, Defendants marketed and advertised that the Siding

was fit for the ordinary purpose for which such goods were used and were free from defects in

materials and workmanship.

8.    Defendants knew or should have known that the Siding was defective in design, not fit for its ordinary and intended use, and failed to perform in accordance with the advertisements, marketing materials and representations disseminated by Defendants and further failed to perform to the reasonable expectations of ordinary consumers.

9.    The Siding is defective and fails to perform both at the Plaintiffs' residences and at Class Members' residences by cracking, chipping, flaking, breaking or splitting, and creating leakage paths, and consequential damages to other property, including the adjoining finishes and walls of the residences.

## GENERAL FACTUAL ALLEGATIONS

10.    Upon information and belief, Defendants used excessive fly ash in their formula instead of the more common grain and silica used by other manufacturers of fiber cement siding in the Siding.

11.    Upon information and belief, Defendants were aware that the addition of excessive fly ash into their Siding caused water absorption and porosity problems, resulting in a product that is too brittle to be used as an exterior building product.

12.    As the Siding goes through typical weather cycles, including heat and cold, it experiences increased expansion and contraction as a result of excess moisture in the product, and begins to crack and break.

13.    Defendants represent that the Siding will last at least 50-years; however, the Siding is so brittle that it begins to fail within the first five (5) years of its service life, and all Siding will eventually fail prior to the represented and anticipated useful service life.

14. Defendants have failed to warn purchasers, installers, or users of the aforedescribed risks of failure.

15. The aforedescribed defect exists at the time the Siding leaves the factory. Failure may occur immediately upon installation or may occur after repeated expansion and contraction through exposure to regular weather patterns.

16. The Siding has been shown to be defective as above described in a number of residences in Iowa in addition to Plaintiffs' residences.

17. Defendants have been put on notice of the widespread defects in their products in Iowa by a number of homeowners.

18. A large number of Iowa homeowners with the Siding have suffered consequential damages similar to Plaintiffs.

19. Other members of the putative class have previously put Defendants on notice of the non-performing condition of the Siding.

20. These aforedescribed defects are due to fundamental design, engineering, and manufacturing errors well within Defendants' area of expertise.

21. Defendants knew or should have known that the defects were present at the time the products left their control, not only because of their expertise and testing, but also because of the notices of defect that it was receiving from homeowners, installers, and builders into the short service life of the Siding.

22. These defects reduce the effectiveness and performance of the Siding and render the Siding unsuitable for the purposes for which they were marketed and advertised.

23. Numerous homeowners, installers, and builders have put Defendants on notice of the manifested damage. In discussions with these individuals and entities, Defendants concealed

their knowledge of the defect, and further represents that the damage is a result of mishandling or installation errors.

24.     As a result of the above-described defect in the Siding and conduct of Defendants, Plaintiffs and the members of the Class have suffered damages by purchasing Siding that they would not otherwise have purchased had they known of the defect, they have been forced to pay for installation of new replacement Siding, and the defective Siding have caused damage to other property within their home.

25.     Consequently, as a result of the defect in the Siding, Plaintiffs and Class Members' have incurred and will incur thousands of dollars in damages to replace the Siding as well as due to water and moisture intrusion issues since the Siding does not perform adequately.

### THE PARTIES

#### Facts Regarding Plaintiff, Brian DeVries

26.     Plaintiff Brian De Vries is a citizen and resident of Marion County, and resides at 1617 Broadway Street, Pella, Iowa.

27.     The defective Siding is installed on Plaintiff De Vries's home, and is cracking, breaking, and otherwise prematurely failing.

28.     In May of 2013 to May of 2014, Plaintiff's home on Broadway Street was being constructed by a reputable builder, who Plaintiff trusted in the selection of the building materials, including siding.

29.     In January of 2014, Plaintiff's builder purchased prefinished fiber cement siding manufactured by Defendants.

30.     In 2016, Plaintiff noticed that one piece of his siding had cracked in half.  He contacted the builder, who replaced the one board.  Believing the problem to be limited to the single board and that the problem had been remedied, Plaintiff did not take further action regarding his siding at that time.

31.     In the spring of 2018, Plaintiff noticed that three (3) more boards had begun to crack.  At that time, Plaintiff contacted the builder and was informed that his siding was manufactured by Allura.

32.     In June of 2018, Plaintiff contacted Allura, and was told to complete a warranty claim.  Plaintiff completed the warranty paperwork, submitted photographs of the cracking, and other requested documents.  Allura's initial warranty response was poor; however, after several follow-ups Allura sent a decision:

> A review of the photographs you submitted indicates that there is no warrantable condition or manufacturing defect with the Allura siding material installed at your home.

> We understand that the basis of your concern is that some of the fiber cement siding product has cracked. It appears, based on the photos you provided that the cracks were likely caused by flex in the handling of the boards during installation which created microfractures that become more apparent as materials expand and contract.

> As a gesture of goodwill, Allura is willing to help defer some the cost for replacement of 6 cracked boards at $5.36 per lap in the amount of $32.16.

33.     Just a few short months after going through Allura's tedious warranty process, Plaintiff noticed additional boards that were suffering from similar cracking.  Plaintiff again notified Allura.

34.     On December 3, 2018, Allura sent a letter to Plaintiff that was identical to its June of 2018 letter; however, failed to provide any compensation, offer of repair or replacement.

35.     As a result of Allura's poor responses and inadequate repair/reimbursement from Plaintiff's warranty claims, Plaintiff determined that he should file this action.

### Facts Regarding Plaintiff, Nicholas J. Price

36.     Plaintiff Nicholas J. Price is a citizen and resident of Dallas County, and resides at 4807 145th Street, Urbandale, Iowa.

37.     The defective Siding is installed on Plaintiff Price's home, and is cracking, breaking, and otherwise prematurely failing.

38.     Plaintiff's home on 145th Street was constructed between August and December of 2013, and Plaintiff relied upon his builder for the selection of quality building materials, including the siding to be installed.

39.     In October of 2013, Plaintiff's builder purchased fiber cement siding manufactured by Defendants and installed it on Plaintiff's new home.

40.     In the summer of 2018, Plaintiff was mowing his lawn and noticed a large crack in a piece of siding.  He made a mental note of the crack, and subsequently, throughout the summer began noticing more and more cracking throughout the siding on his home.

41.     In June of 2018, Plaintiff contacted his builder who, in October of 2018, provided him with documentation that the siding was manufactured by Allura and was purchased at a nearby Menards.

42.     In October of 2018, Plaintiff contacted Menards and requested that he be reimbursed for the full amount of the siding paid by the builder and conferred to him through the purchase of his home.

43.    On October 24, 2018, Menards mailed a letter to Defendant Plycem notifying them of problems with their fiber cement product installed on Plaintiff's home.

44.    On November 8, 2018, Allura simply mailed a copy of the warranty claim submission form to Plaintiff.  As the response from Allura was less than adequate, required an inordinate amount of time to complete the forwarded form, and appeared to be futile, Plaintiff proceeded with the filing of this action.

### Facts Regarding the Defendants

45.    Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc., with a principal place of business in the State of Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in Iowa.

46.    Specifically, Allura USA LLC manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds and potentially thousands of Class Members in Iowa and the United States.

47.    Defendant Plycem USA LLC d/b/a Allura was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in Iowa.

48.    Plycem USA LLC d/b/a Allura manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds if not thousands of Class Members in Iowa and the United States.

49.     Defendant Plycem USA Inc. was and is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas and all times relevant herein, Plycem USA Inc. transacted and conducted business in Iowa.

50.     Plycem USA Inc. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Iowa and the United States.

51.     Defendant Elementia USA, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Elementia USA, Inc. transacted and conducted business in Iowa.

52.     Elementia USA, Inc.  manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Iowa and the United States.

53.     Defendant Elementia, S.A.B. de C.V. was and is a corporation organized and existing under the laws of Mexico and at all times relevant herein, Elementia, S.A. de C.V. conducts and is engaged in business in the State of Iowa.

54.     Elementia, S.A.B. de C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Iowa and the United States.

55.     At all times relevant herein, Elementia, S.A. de C.V., Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted business in Iowa.

56.     The Defendants are the agents and/or alter egos of each other, and the corporate interests of these Defendants were amalgamated so that they in effect operated as one and the same entity.

57.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement siding at issue.

58.     At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following classes (collectively the "Classes") defined as follows:

**All persons and entities that own structures within the State of Iowa in which Defendants' Fiber Cement Siding is installed.**

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants and their legal representatives, assigns and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

60.     *Numerosity*:   The Classes are composed of thousands of persons geographically dispersed throughout the state of Iowa, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' records or identifying marks on the Siding.

61.    *Commonality*:    Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.    These common legal and factual issues include, but are not limited to the following:

a.    Whether the Siding is defective;

b.    Whether the Siding prematurely fails;

c.    Whether the Defendants were negligent in their design and manufacture of the Siding;

d.    Whether the Siding has not performed or will not perform in accordance with the reasonable expectations of ordinary consumers;

e.    Whether Defendants knew or should have known of the defect;

f.    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defect;

g.    Whether Defendants breached the implied warranty of merchantability by failing to disclose the defect in the Siding and by continuing to sell the defective Siding even after it knew of the defect in the Siding;

h.    Whether Plaintiffs and the Class members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Classes for replacement of Siding and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between Siding that should have last 50-Years and the Siding containing the defect; and (iii) the

−11−

i.      Whether Plaintiffs and the Class members are entitled to replacement of their defective Siding with non-defective Siding; and

j.      Whether Defendants falsely advertised and marketed their products to consumers.

62.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, and selling the defective Siding, Defendants' conduct in concealing the defect in the Siding, and Plaintiffs' and Class Members' purchasing homes with the defective Siding.

63.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

64.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout Iowa would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

–12–

inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COMMON FACTUAL ALLEGATIONS

65.     Upon information and belief, Defendants have sold, directly or indirectly (through dealers and other retail outlets), thousands of units of Siding nationwide and in the State of Iowa.

66.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the fiber cement siding that is the subject of this litigation.

67.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of Iowa.

68.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

69.     Upon information and belief, Defendants used excessive amounts of fly ash instead of the more common grain and silica used by other manufacturers of fiber cement siding in the Siding.

70.     Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of concrete utilized in the manufacture of the Siding.

−13−

71.     However, Defendants' use of excessive fly ash in their design and/or formulation results in water absorption, porosity problems, and other uniform defects alleged herein none of which were inherent in the grain and silica sand design formulations.

72.     Upon information and belief, Defendants knew that the addition of excessive fly ash into their Siding caused water absorption and porosity problems, and that such formula created a product too brittle for use as an exterior building product.

73.     As the Siding goes through repeated thermal cycles, it experiences increased expansion and contraction as a result of excess moisture in the product, which causes cracking and breakage.

74.     This expansion and contraction of the Siding leads to the uniform defects and damage, which are alleged herein.

75.     Defendants market and advertise the Siding as durable, and as offering long-lasting protection for a specified life of 50 years.

76.     At all times material hereto, Defendants marketed and represented:

a.      "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."

b.      "Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects. They are also suitable in both hot and cold climates and are fire resistant. What's more, Allura products

–14–

feature realistic wood grain and textures, come in an incredible array of colors and are paintable for unlimited design possibilities."

c. "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures • Best ROI for homeowners* for 8 years in a row."

d. "It won't rot, warp or splinter and is designed to significantly outperform wood in every way."

77. Defendants market and advertise the Siding as durable, and as offering long-lasting protection for a specified life of 50 years.

78. Plaintiffs, Plaintiffs' builders or subcontractors as well as Class Members' builders and subcontractors relied on Defendants' representations and purchased the Siding and installed it on Plaintiffs' homes during construction.

79. As discussed herein, the Siding has not lived up to Defendants' representations and, given the early and severe deterioration that the Siding requires unexpected maintenance and premature repair and replacement.

80. The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiffs and members of the Class and lowers the value of the property.

81. All of Defendants' Siding is uniformly defective such that Plaintiffs and Class members' Siding is failing before the time periods advertised, marketed, and guaranteed by Defendants or otherwise expected by ordinary consumers purchasing siding.

82.     Specifically, Plaintiffs' and Class Members' Siding is cracking, splitting, warping as well as falling off Plaintiffs' and Class Members' homes.

83.     The defects present in the Siding are so severe that Plaintiffs and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

84.     As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.

85.     The water intrusion and above-described damages resulting from the Siding constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

86.     The above-described defects are due to fundamental design, engineering and manufacturing errors, which should have been within Defendants' expertise.

87.     Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

88.     The above-described deficiencies exist at the time the Siding leaves the factory.

89.     Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

90.     The Siding on their homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants, and the time advertised by Defendants resulting in and requiring them to expend thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

91.     Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely due to moisture invasion or other defects.

92.     The outward manifestation of the Siding deterioration and deformation is cracking, warping, discoloration, and product shrinkage.

93.     At the extreme, the Siding breaks and falls off the structure and permits paths for leakage through the Siding and infiltrating the home, including the sheathing, framing components, and eventually the interior of the home.

94.     In short, the Siding does not perform in accordance with the reasonable expectations of consumers and is not a suitable building product to be installed on houses or buildings.

95.     Upon information and belief, Defendants have received thousands of warranty claims and complaints alleging a manufacturing or design defect in the Siding.

96.     Despite receiving a litany of complaints from consumers, such as Plaintiffs and other members of the Class, Defendants have refused to convey effective notice to consumers about the defects, and refused to fully repair damage caused by the premature failure of their product.

97.     Defendants' response to customer complaints, claims submissions and other requests for assistance is woefully inadequate under these circumstances in that Defendants knowingly misrepresent the damage to be caused by installation or cracking from mishandling, and otherwise attempt to limit Plaintiffs' and Class members' recovery to replacement costs of individual boards of Siding piece by piece, excluding the costs of labor to replace the Siding or materials to match the original siding with replacement (i.e. paint).

98.    Defendants' uniform representations to Plaintiffs and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiffs and the Class.

99.    Such a campaign of misrepresentations was made in order to conceal the true nature of Defendants' defective Siding, and to dissuade Plaintiffs and Class Members from pursuing claims against Defendants.

100.    At all relevant times, Defendants had a duty to disclose to Plaintiffs and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in their design such that the Siding was not suitable for use as an exterior building material.

101.    Because the defects in the Siding are latent and not detectable at the time of purchase until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Siding was defective, despite the exercise of due diligence.

102.    The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.

103.    This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

106.    Plaintiffs and Class Members have not received the value for which they or their builders bargained when they purchased the homes containing the Siding.  There is a difference in value between the Siding as advertised and the Siding containing the defect and unsuitable as an exterior building product.

107.    The value of structures containing the Siding have diminished as a result of the defect.

108.    All conditions precedent for filing this Complaint have been satisfied.   This Complaint has been filed prior to the expiration of any applicable statutes of limitations or statutes of repose.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

109.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment.   Upon information and belief, Defendants have known of the defect in the Siding for years and has concealed it from owners, installers, and builders of the Siding and/or failed to alert the owners of the defective nature of the Siding.

110.    Given Defendants' failure to disclose this known but non-public information about the defective nature of the Siding – information over which it had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Siding was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE – MANUFACTURING/FORMULATION

111.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the prior paragraphs as though fully set forth herein.

112.    The siding is a product within the meaning of Iowa products liability law.

113.    Defendants owed a duty to exercise reasonable care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Siding Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause did not cause damage as described herein.

114.    Defendants breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Siding Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects.

115.    The negligence of Defendants, their agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

> a.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Siding without thoroughly testing them;

> b.    selling Siding without performing proper and sufficient tests to determine the dangers of premature failure to their users;

     c.     negligently failing to adequately and correctly warn the Plaintiffs, the Class members and the public, of the dangers of premature failure of Defendants' Siding;

     d.     negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, defective and would prematurely fail;

     e     negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to their manufacturing defect and premature failure;

     f.     negligently representing that Defendants' Siding was suitable for its intended purpose when, in fact, it is too brittle to serve as an exterior building product;

     g.     negligently processing the Siding in a manner that would prematurely fail; and

     h.     in other such ways that may be proven at trial.

116.    Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' Siding in that they:

     a.     failed to use due care in manufacturing their Siding so as to avoid the premature failure when the Siding was used for its intended purpose;

     b.     failing to conduct adequate testing to determine the useful life of the Siding; and

     c.     failing to warn Plaintiffs, prior to actively encouraging the sale of their Siding either directly or indirectly, orally or in writing, about the defective nature of the product; and

     d.     in other such ways that may be proven at trial.

117.    Upon information and belief, despite the fact that Defendants knew or should have known that their Siding was defective and would premature fail, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell Siding to the Plaintiffs, the Class members and/or the consuming public.

118.    Defendants knew or should have known that consumers such as Plaintiffs, the Class Members would foreseeably suffer damage to the Siding and Plaintiffs and Class

Members' homes as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

119.    Defendants knew or should have known that Plaintiffs and the Class Members would foreseeably suffer damages, and/or be at increased risk of suffering damages, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent formulation of their fiber cement Siding, as set forth above.

120.    Defendants' negligence was the proximate cause of Plaintiffs' and the Class members' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

121.    By reason of the foregoing, Plaintiffs and the Class Members experienced and/or are at risk of premature failure of the Siding.

122.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

123.    In addition to compensatory damages, Plaintiffs and the Class Members are entitled to punitive damages, because Defendants' conduct was gross, oppressive, aggravated, or involved a breach of trust or confidence.

## COUNT II
## NEGLIGENCE – DESIGN DEFECT

124.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

125.    The siding is a product within the meaning of Iowa products liability law.

126.   The siding was expected to reach, and did reach, users and/or consumers, including Plaintiffs, without substantial change in the defective and unreasonably dangerous condition in which it was sold or distributed.

127.   Under Iowa products liability law, Defendants owed Plaintiffs a duty to exercise reasonable care in designing and testing the Siding.

128.   Defendants designed the siding for the purpose of installation on the exterior of homes and other buildings or structures.

129.   At all times material, the siding was used in a manner intended and/or foreseeable to the Defendants.

130.   A consumer using the siding would reasonably expect the siding to be free of significant defects.

131.   The siding, as designed by Defendants, was defective in that it incorporated the use of excessive fly ash resulting in water absorption, porosity problems and other uniform defects.

132.   The siding, as designed by Defendants, experiences increased expansion and contraction as a result of excess moisture in the product.

133.   The foreseeable risks of using the siding significantly outweigh the benefits.

134.   Reasonable alternative designs existed for the siding which would have eliminated or reduced the risk of premature failure, cracking, chipping, crumbling, warping, discoloration or product shrinkage.

135.   Reasonable and feasible alternative designs include, but are not limited to, use of grain and silica design formulations.

136.    The failure to use feasible, reasonable alternative designs that eliminate or mitigate water absorption and porosity and renders the Siding unreasonably unsafe.

137.    Defendants knew or should have known that its use of excessive fly ash caused water absorption and porosity problems, and that such formula created a product too brittle for exterior building product.

138.    Plaintiffs' damages were caused by Defendants' conduct as follows:

A)    Failing to conduct adequate safety and efficacy testing before placing the Siding into the stream of commerce;

B)    Failing to timely establish procedures for reviewing the design of the Siding after receiving information that the Siding failed early in the product's expected life and often (volume of failures reported);

C)    Failing to timely establish procedures for validation or, where appropriate, review and testing of design change orders for the Siding before sale; and

D)    Failing to design or redesign the siding to eliminate or mitigate early failure as described above.

139.    Plaintiffs were proximately harmed by the design defects in the siding as described above.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, vicariously, severally and/or in the alternative, for such damages as may be permitted pursuant to the laws of the State of Iowa, together with interest thereon, costs of suit and attorneys' fees.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

140.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs, as though fully set forth herein.

141.    Defendants entered into contracts with retailers, suppliers and/or contractors to sell their Siding to be installed at Plaintiffs' and the Class Members' properties.

142.    Plaintiffs and the Class Members are intended third-party beneficiaries of those contracts as it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class Members when the Siding passed to homeowners through the direct sale of the Siding, as well as through the sale of homes containing the Siding.

143.    Defendants warranted that their Siding was merchantable and reasonably fit for their ordinary purpose as an exterior building product, were free of defects, and would not cause damage as set forth herein.

144.    Defendants breached the implied warranty of merchantability by selling Siding that was and is defective, and not reasonably fit for its ordinary purpose as an exterior building product and fails long prior to its 50-year expected service life.

145.    Defendants' defective Siding causes and continues to cause damage as described more fully herein.

146.    As a result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class Members have suffered and continue to suffer damages.

–25–

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

147.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

148.    Defendants entered into contracts with retailers, suppliers and/or contractors to sell their Siding that was to be installed at Plaintiffs' and the Class Members' properties.

149.    Plaintiffs and the Class Members are intended third party beneficiaries of those contracts as it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class Members when the Siding passed to homeowners through the direct sale of the Siding, or through the sale of homes containing the Siding.

150.    At the time Defendants entered into contracts with retailers, suppliers and/or contractors, Defendants knew and had reason to know that their Siding was being purchased for the particular purpose of being installed as an exterior building product on Plaintiffs' and the Class Members' homes.

151.    Defendants warranted that their Siding was fit for the particular purpose of being installed on the Plaintiffs' and the Class Members' homes as an exterior building product, and that the Siding would not fail prior to 50-Years of useful service life.

152.    Plaintiffs and the Class Members, directly or indirectly, relied on Defendants' representations and warranties that their Siding was suitable for the particular purpose of being installed at Plaintiffs' and the Class Members' properties, and that the Siding would not fail before 50-Years of useful service life.

153.    Defendants breached the implied warranty of fitness for a particular purpose by selling Siding that was defective and not reasonably fit for their ordinary purpose.

154.    Defendants' defective Siding causes and continues to cause damage as described more fully herein.

155.    As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the Class members have suffered and continue to suffer damages.

## COUNT V
## FRAUDULENT MISREPRESENTATION

156.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

157.    Defendants falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Defendants' Siding would be free from defects, fit for their customary and normal use as an exterior building product, and not fail prior to the 50-Year useful life touted by Defendants.

158.    Further, when Defendants were contacted regarding the damages experienced resulting from the defect in the Siding, Defendants represented that the damage was not related to a defect in the product, but was the result of mishandling or installation errors.

159.    That representation made by Defendants was, in fact, false.

160.    Defendants, upon information and belief, knew those representations to be false and/or they willfully, wantonly, and recklessly disregarded whether the representations were true.

161.    Defendants made these representations with the intent of defrauding and deceiving the Plaintiffs, the Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs and the Class Members.

162.    At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

163.    In reliance upon said representations, the Plaintiffs' and Class Members' properties were built using Defendants' Siding was installed and used on Plaintiffs', the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

164.    Defendants knew and were aware, or should have been aware, that the Siding was defective and not fit for their customary and normal use, would prematurely fail, and the resulting damages were not caused by mishandling or installation errors.

165.    Defendants knew, or should have known, that the Siding had a potential to, could, and would cause severe damage and injury to property owners and their homes.

166.    Defendants brought the Siding to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class members.

167.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, damage and injury.

## COUNT VI
## FRAUDULENT CONCEALMENT/OMISSION

168.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

169.    Defendants knew or should have known that the Siding was defective in design and formulation, were not fit for their ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and product literature disseminated by Defendants, and with the reasonable expectations of ordinary consumers.

170.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Siding is defective, would prematurely fail, and that the damages were not the result of mishandling or installation errors.

171.    Defendants had exclusive knowledge of the defective nature of the Siding at the time of sale. The defect is latent and not something that Plaintiffs or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

172.    Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Siding or homes with Siding free from defects.

173.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are not aware of anything in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

174.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in

–29–

Case 4:19-cv-00014-RP-CFB   Document 1   Filed 01/14/19   Page 30 of 33

deciding whether to purchase (or to pay the same price for) the Siding or the homes containing the Siding from their builders.

175.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

176.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Siding and homes containing the Siding.

177.    Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Siding on the same terms if the true facts concerning the defective Siding had been known; (b) they paid a price premium due to they would be free from defects; and (c) the Siding did not perform as promised.

178.    By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, damage and injury.

## COUNT VII
## STRICT PRODUCTS LIABILITY

179.    Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

180.    The Siding was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

181. When it left the control of Defendants, the Siding was expected to, and did reach Plaintiffs and Class Members without substantial change from the condition in which it left Defendants' control.

182. The Siding was defective when it left Defendants' control and was placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the product.

183. Specifically, the Siding was unfit for its intended use, and contained a defect which caused the peel, crack, break, and otherwise fail, permitting leakage paths and promoting water infiltration and damage to sheathing, framing components, and other property on Plaintiffs' and the Class Members' residences/structures.

184. Plaintiffs and the Class Members used and installed the Siding in substantially the same condition it was in when it left the control of Defendants, and in the manner intended.

185. As a direct and proximate result of Defendants' defective design and/or manufacture of the Siding, Plaintiffs and Class Members suffered damages and economic loss as set forth herein.

186. Defendants are strictly liable to Plaintiffs and Class Members for all damages and economic losses resulting from its defective design and/or manufacture of the Siding.

187. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT VIII
## DECLARATORY RELIEF

188. Plaintiffs individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

189.    Defendants have acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).Plaintiffs seek a ruling that:

a. the Siding is defective, which results in premature failures;

b. Defendants must notify owners, distributors, installers, and builders of the defect; and

c.  Defendants will pay the full cost of repairs and damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

a.      For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Class, and appointing the law firms representing Plaintiffs as counsel for the Classes;

b.      For compensatory damages sustained by Plaintiffs and the Class;

c.      For equitable and/or injunctive relief for the Declaratory Relief Class;

d.      For payment of costs of suit herein incurred;

e.      For both pre-judgment and post-judgment interest on any amounts awarded;

f.      For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

g.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs individually and on behalf of the Plaintiff Class Members, hereby demand a trial by jury as to all issues so triable.

Dated: January 14, 2019

HAYES LORENZEN LAWYERS PLC

By _____

     Mike H. Biderman     AT0011133
     mbiderman@hlplc.com
     Plaza Centre One, Suite 580
     125 S. Dubuque Street
     Iowa City, IA 52240
     Phone: (319) 887-3688

By /s/ Karen A. Lorenzen
     Karen A. Lorenzen     AT0004862
     klorenzen@hlplc.com
     Plaza Centre One, Suite 580
     125 S Dubuque Street
     Iowa City, IA 52240
     Phone: (319) 887-3688

ATTORNEYS FOR PLAINTIFFS